Mr. Maker. Thank you, Your Honor. May it please the Court. The trial court improperly analyzed prejudicial error in this case, focusing upon the nature of the lease sought rather than upon the alleged error that was non-prejudicial. Prior to Amendment 7, the agency accepted all of the protester Labatt's timely submissions via email, as it did across the board, for all of her orders. Mr. Maker, you're saying that we should determine that there's no standing here rather than rule that there was standing, but then rule in your favor. Yes, Your Honor. While either result would be acceptable to the government, we believe that prejudice is first and foremost a matter of standing. This Court, however, in cases such as Bannum, has had instances in which it analyzed the question of prejudice in the second instance, arguing that there was an issue looking at the merits first and then turning to the question of prejudice. But even in Bannum, the question of prejudice went directly to the question of standing. But you're saying here it's a standing issue and we should look at it first. Yes, the Court has described it as a standing error. As I was stating, Labatt was alone in improperly submitting its response to Amendment 7, which was both late and submitted via email. Labatt's challenge does not focus upon the agency's actions with regards to Amendment 7, which would result in an injunction requiring the agency to consider Labatt's proposal. Rather, Labatt focused upon the agency's prior actions in accepting its submissions, along with submissions of all other offerors via email. But your point is that because it was late and nothing else, and no one else's was, regardless of how it was submitted, that deprived them of standing, right? Yes. Just because it was late. Well, it would deprive them of standing with regards, it depends upon the nature of their challenge, is with regards to their submission of Amendment 7, they wouldn't have standing to challenge that because they were late. There's an adequate independent ground which has their proposal not considered. If it's a matter of standing, I would have thought that since they were a bidder and lost the bid, they're entitled to protest. They may lose on the merits because they were late, but you're saying that they have no standing at all if they're late? If they have no standing to protest their submission of Amendment 7 because they were late, because there's an adequate independent ground. They could challenge the lateness, but they have no grounds to challenge anything with regards to other issues. You can always challenge if, for example, Labatt's challenge at the trial court had been we were actually submitting in a timely fashion, and therefore you should have considered us with regards to Amendment 7. Yes, they absolutely do have standing to contest that. The question of standing does intersect the nature of the challenge and the actual prejudicial impact. Both need to be looked at. In this case, the court combined two different holdings, combining both an analysis of prejudice, which we contend was incorrect, along with a separate sort of ruling that Labatt was able to have standing to bring this protest. To be clear, in the case before this court is a case in which an injunction was issued that sets aside the entire procurement, and that injunction could only be issued if the court was focused upon the error or the alleged error with regards to letting everyone submit their proposals via email at an earlier stage in the procurement, not if the challenge was based upon Labatt's later submission of Amendment 7. Because injunctions are narrowly tailored to focus upon the harm sought to be avoided and cured, and if the only harm sought to be avoided and cured was Labatt's later exclusion from the protest, the injunction would have focused upon that, not upon setting aside the entire procurement as it did in this case. But once again, the point you're trying to make is that they were late. That meant that they really didn't have anything. It was as though you and I were walking down the street and trying to protest. Because they were not late, regardless of anything else, they don't have standing to bring this protest. Isn't that the point you're trying to make? That's the point of why they don't have, yes, standing with regards to... Well, I'm trying to figure out why you're not... Why you're walking away from it. It makes your case a lot harder. No, no, I'm not walking away from it, Your Honor. But what I am trying to clarify is that there are two possible elements in this case. One is their lateness. And the second element is whether or not they were prejudiced by the particular error they're alleging, which is allowing everyone to submit via email. And there are two, and have been set forth in trial court's opinion as different issues. And so I'm trying to deal with both of those. Right. But if we say that they were late, then that means they were late for the whole contract, not just that amendment. The amendment was part of the contract. The amendment was a material change, yes. Yes. Yes, absolutely. If they were late for that, then that's the end of the case, right? Yes, Your Honor. If we don't look at all this other internal violations of the procurement, where they allow things to happen that they didn't, they shouldn't, but they all benefited from and all that stuff. Yes. Am I right? Is that your position? Yes, generally. But the trial court, and I think it's important to know what the trial court did. I know what they did. I want to know what you want. The trial court looked over at Garufi and allowed them to challenge, allowing everyone previously to submit by email. And the answer to that, the reason why they don't have standing to challenge that, the answer to that is not just simply that they're late. The answer to why they don't stand to challenge that is because they weren't prejudiced, because they're seeking to burn the very bridge upon which they have to stand. That's not a question of standing, is it? It's the merits. There's a merit. No, Your Honor. The question of whether they have, the question of prejudice is a question of standing. The question of whether you have the ability to bring a challenge. If you're not prejudiced, then perhaps the error was harmless and you lose your case, but that doesn't mean that you can't get into the courthouse. Well, Your Honor, this court has repeatedly described prejudice as a matter of standing throughout its case now. You're saying there's no standing, that the standing issue rises because of the argument that they're making. Am I correct, Mr. Manny? They seem to be saying, well, last closing counsel, but they seem to be saying that, all right, we, it's true that our FedEx package didn't get there until a day later, but it doesn't make any difference because everything was void because the whole thing was improper, starting with, I guess, the responses to Amendment 4, it was? That's correct. They'd say, starting with the responses to Amendment 4, everything was improper because emails were going back and forth, and that wasn't right. So, really, there wasn't anything to respond to. Yes, that's correct, Your Honor, and that's where the whole thing was void, defective and void. That seems to be their contention. Yes, and that's where they brought in the case of Garuthi, arguing that because we were able to set aside this entire procurement, we would have standing to raise this challenge. However, in Garuthi, unlike this case, Garuthi wasn't challenging the same, an error that was applied to them. In Garuthi, there was no equal treatment across the board. An offerer who had allegedly engaged in a kickback scheme was found responsible. Garuthi really arises because of the argument they're making. It's not sort of the typical standing case where someone is protesting and they wouldn't have gotten the contract anyway. I mean, if they were just coming in, as you said earlier, at the beginning of the argument, and were simply challenging the determination that they were late, they would have standing. Yes. You don't dispute that. Yes, if they were challenging the determination that they were late, they would have standing. In the government's view, the standing problem arises because of the particular argument they're making. Yes. Namely, that everything prior to Amendment 7 was defective, hence there shouldn't have been an Amendment 7, right? And that's exactly where the point and the question of prejudice comes into this case. Well, they don't deny that they were late, do they? No, they don't deny that they were late. They admitted at the trial court level that they were late. Initially, they had brought a challenge, challenging the determination that they were late, but they had dropped that at the trial court level. Your Honor, do you want to save your rebuttal time? Yes. Thank you, Your Honor. Mr. Bailey? May it please the Court? I'm Jonathan Bailey, Counsel for Labatt Enterprises, Labatt Food Service. This case is being presented as a case of prejudice, and that's because the underlying facts and the merits of the challenge that my client brought are undisputed.   The fact is that solicitation did not permit submission of email proposals or facsimile proposals, and that wasn't because of a standard FAR clause. This agency specifically crafted its solicitation, used an amendment to the standard commercial items proposal submission clause, and decided affirmatively that it did not want to accept fax or email offers. And then during the procurement... Your client did participate in that exercise like everybody else. Yes, it did. And the government has argued that my client benefited by that, by the agency not enforcing its solicitation in a timely manner and rejecting all offers. My client didn't benefit. Had my client been rejected at that time, so would have all offers. It would have been in the same position it is now, or the position it wants to be in now, the position it's trying to be in now. If it had been rejected then, there wouldn't have been any harm to my client. They would have been in the same position as every other So when the government says that my client benefited by the non-rejection of those initial email offers, no. All it did was delay the pain because the agency proceeded then on multiple occasions to accept proposal revisions by improper means. And let's be clear, there's no difference between a late proposal, for validity purposes, a late proposal and one that's submitted by fax or email when that's not authorized. Means and time of submission are co-equal in the FAR. No one is primary over the other. So being late is not more invalid than being submitted by an improper means. But the prejudice here in your view arises because you lost, right? Supposing you'd won. Supposing you wouldn't be complaining, right? I would be precluded from claiming, yeah, by a lack of showing of harm at that point. My client has been harmed now because out of all offers, it has been singled out for enforcement of the bid submission rules in the solicitation. The agency allowed everyone else to go by submitting emails when it wasn't permitted, except for one offer, my client. Well, you're the only one that was late. Right. So the means, if you all engaged in the same means, but you were the only one who violated the time requirement. No, my client was late. The others submitted by email. Mine submitted by email too. But the point is the government selected one aspect of invalidity, timeliness, singled that out for treatment by rejecting my client's proposal. I thought the other submissions, the submissions for Amendment 7, everybody sent in something in hard copy, right? Yes, they did. Okay, so in other words, there were no emails, except for the email that I guess your client sent in two hours afterward. Right. The other parties submitted their responses to Amendment 7 in hard copy. Yes, they did. And then you came in in hard copy afterward. Yes, I did. Of course, in the end, that's basically irrelevant to our argument. Our argument is this procurement was over in August of 2007 when the agency received proposals by improper means and accepted them and proceeded with regulation. I mean, you look at the record, there were emails, friendly emails going back and forth. Everybody knew what was going on. There was a de facto alteration. It was for the benefit of everybody. Your Honor, you don't want that to be the law. If that becomes the law, then offerors will be able to slide on everything on getting their emails in. If some government official says, well, you know, it says 4 o'clock, but 4 or 5 is okay. That's different. Wow. I mean, here, everybody was communicating by email. And nobody was complaining about it, were they? No one was complaining about it? No, Your Honor. The only complaint was when somebody lost. Well, that's been the case in several GAO cases and Court of Federal Claims cases where procuring agencies have communicated with offerors by email or fax and then rejected a fax or email proposal submission because it wasn't permitted by the solicitation. But that didn't happen here. Those are quoted in length. But that didn't happen here. I'm sorry, Your Honor? There wasn't a rejection here because No, but there should have been. No, no, but there wasn't. Your proposal was not rejected because of the fact of the email submittal. But, Your Honor, it was. Well, no. Let's get to the final conclusion. I mean, the initial letter had two reasons in it. And the very first one was email, Your Honor. No, but that's And then after I explained to agency counsel what the effect of that was going to be on the other proposals, that is when the agency changed its tune and decided that it was only lateness that it was concerned about. But lateness is the critical point. There is no difference, lateness or improper submission. One is not primary over the other. You're not more culpable because you're late than if you submit it by fax or email when it's not permitted. They're the same. And you could say the same thing. You could say Garuffi. You could say Impressa was not prejudiced. It was eliminated from the competitive range. It was decided that its proposal was not competitive, should not have been included in the range of offers considered for award. And yet, this court decided that because the secondary challenge that it raised would result in resolicitation of the requirement, as here, Impressa was allowed to go forward. There's no difference. If you say that I can't go forward with my challenge for declaratory relief on the entire procurement because my proposal was late, being late is no different than being eliminated from the competitive range. And either way, you're no longer being considered for award. Your contention is that the procurement was basically void starting with what happened after Amendment 4 was put out, right? Yes, Your Honor. Because that's when the – that's your – Yes, Your Honor. And I acknowledge the harshness of that result. Ninety-nine times or 999 times out of 1,000, the harshness falls on the bidder. And I know this because it's fallen on many of my clients. I've had clients who submitted a proposal by facsimile. I've been able to prove with evidence that the entire facsimile bid was in the memory of the government's machine but just hadn't finished printing yet. And that bid was rejected. And that rejection was upheld in a protest. So, yes, our bidding system, our procurement system has very hard and fast rules. And sometimes having those hard rules produces harsh results. But that doesn't mean you change the rules for an individual result. Here, if you say that submission by email is de minimis, then any offeror can decide to submit by email any time they want because it's a de minimis violation. Well, that gives them a competitive advantage. If I have to send my bid in by mail a day before, two days before, depending on how far away I am from the procuring office, well, I can just wait until the day of submission, send it in by email. It's de minimis. It should be accepted. So, I mean, we cannot, the government, the court should not back off the hard and fast rules that we have for bid submission. And they say you must submit your bid at the time specified and by the means specified. I just want to ask one thing. Is the requirement that we're talking about here that, is it A32? Is that where it's spelled out? A32 of the solicitation. Joint appendix. I believe so, Your Honor. Are we talking about the solicitation instructions? Yes. It should be the addendum to FAR 52.212-1. Well, take a look at A, see what A30. No, just so I make, if that's the, this is where the instructions are set forth. Is that the, is that the provision that you say was violated? I'm sorry, Your Honor, my copy of the appendix didn't make it on the flight with me, with my briefs and appendix. Oh, it says, maybe government counsel can, yeah, Mr. Mager can give you his. I appreciate it. This is the SF-1449 cover sheet instructions. There's also further back in the proposal preparation instructions in the addendum to FAR 52.212, which would be at A, starting at A85. So you say it's, it's, what's it, A? It's a combination of the two. If you, Judge Horne relied on both in combination as well. So you say it's A32 plus A85? A85, yes, Your Honor. Just A85 or any other page? I don't believe there's any other that, any other pages that address the form, of course, the lateness rules are on the next page, on A86. So it's A, it's A32 and A85, right? Yes, Your Honor. Okay. And really, it wasn't disputed before the trial court, and I don't think it's disputed here on appeal, that email offers were not acceptable. There's been the argument that it's a de minimis violation to accept them, but I don't think there's any argument that's been made that they are, were acceptable under the solicitation. Your Honor, as I said at the beginning, this is actually a fairly simple case. There really isn't any dispute, as I just said, that the solicitation did not permit submission of email offers, any more than it permitted the submission of late offers. It's not disputed on the record that all of the offers remaining in this competition submitted invalid proposals by failing to comply with the submission rules. The government is asking you to ignore that, primarily on the basis that it would produce a harsh result in the government, having to reissue the solicitation, although there's now been more time since the trial court's decision than the original procurement took to get to an award. So the government could have already reaccomplished this by now. A ruling here that it was allowing the government to slide on this, allowing, saying that it was okay because an offer was, the protesting officer was late later, so he was double invalid. It was okay to accept invalid proposals will set a significant precedent. It will back away from that harsh, that bright line that says proposals must be submitted at precisely the time and in precisely the manner that the solicitation and the FAR require. Why didn't your client object at the time that this was violated? Well, for two reasons. One, objection, I mean there was nothing to object to. It hadn't, the government hadn't yet decided to selectively enforce the submission requirements for the proposals. It was still in the competition. And frankly, it was the agency that raised the issue itself first when it rejected my client's proposal in May. Frankly, the offerers just weren't clued into that issue until the agency made it an issue by rejecting my client's proposal on that basis. Granted, they attempted to withdraw that later. Although, as Judge Horne observed, that's a bit of revisionist history. Once you've, I mean, the truth is in the pudding. The agency came out and said your proposal is invalid because you submitted it by email. Oh, and it was late. Why wouldn't it be considered a waiver of an objection when this has been known for the entire period of gearmen? Well, I don't think that, number one, the case law up to this quarter, though I'm not aware that the court has directly ruled on this other than, and the Court of Federal Claims ruled on it recently in the Geosci's case that we both, both sides discussed. It's very clear that the government cannot waive an invalid proposal. So it would be very odd for this court to rule that a offerer or a protester could waive what the government cannot by a tortured view of standing or prejudice. I mean, the government, it's clear, the government cannot waive the lateness of a proposal. That's what the Geosci's case was about. If a proposal is improperly submitted... I'm talking about the other, I'm not talking about the lateness, I'm talking about the other. But there's... The email part. Again, that's, and I know I haven't made that point strongly enough. There is no difference. If a proposal is submitted late, it is just as invalid and no more invalid than if it's transmitted in the wrong manner. So you're saying, Mr. Ben, in response to Judge Mears' question, I mean, I think... the fact that we don't see anybody in the record here while the emails were going back and forth, no one saying to the contracting officer, wait a minute, we should be doing this in hard copy. That's maybe... No one is, and everyone should have been, including the government. All the bidders should have been. The government should have been. The government was the one who picked up on it. The government was the one that put it on the table and made it an issue. But it's pretty, it's evidence that nobody thought they were being prejudiced by it. Well, yeah. You're not prejudiced until the government decides, well, we haven't enforced the proposal of submission instructions yet, but we're going to now. Now, late is late. Now, email is email. But before, well, okay, we let you slide, so... But you would still be here, Mr. Bailey, even if the only thing the government had said in both of its letters at the end was your proposal is rejected because you're late. Well, that would be a different universe, Your Honor. But, yeah, I probably would still be here because the proposals would still be invalid. Because of the email exchanges. Yes, Your Honor. Once a proposal is invalid, it's invalid. It can't be subsequently revived, resuscitated, brought back to life by any act of the offeror or the government. And the law is very clear on that. But a bid can be invalid if it isn't submitted on time. Right. Or if it's submitted by fax or email when it's not permitted. Well, it's not on time, though. Oh, okay. I'm out of time. Okay. Thank you, Mr. Bailey. Thank you. Mr. Mager. Thank you, Your Honor. Mr. Mager, I have just one question. Mr. Bailey directed our attention to pages 32 and 85 of the joint appendix. And thank you for letting him use your copy. Where do you say lies the prohibition against emails? I mean, we know emails were used. And everyone seems to be taking the position that, you know, they weren't allowed. Mr. Bailey says that was a prejudicial point. You say it was not. But where exactly do we have to go and see the language that says you couldn't use emails? Your Honor, there's no language that says you couldn't use emails, but it doesn't specify that email is an approved method to submit your response to the offers. So I do believe Mr. Bailey did focus the Court's attention in the right direction. It's just that emails are not explicitly allowed or explicitly talked about with regards to solicitation. If something's not talked about, does that mean – and I'm not asking a rhetorical question. I'm not trying to – if something's not talked about, does that mean it can't be used? It means it's generally not within the scope of the RFP. So, yes, we don't challenge the fact that submissions were not supposed to be permitted by email, that you were supposed to be submitting via either facsimile or by hard copy. To address a few of Mr. Bailey's points, Mr. Bailey raised the concern that any offeror can submit via email if they wanted to, if this Court rules in the government's favor. That's not the case. I mean, in order to be allowed to submit via email where the RFP does not specifically specify it, the FAR would still require that any sort of allowance of that would be non-prejudicial. In other words, you cannot, under the Federal Acquisition Regulations, simply allow one offeror to submit via email and not allow everyone else to submit that same proposal via email. It can change with regards to proposals. It can change with regards to revisions. But the minor informality rules found at 14.405 explicitly include a prejudicial requirement. Method of submission is a minor informality, and the FAR defines that as matters of form and not substance. Method of submission would normally fall within a matter of form, not substance, except in most cases simply allowing one person to submit by a different method of submission would be prejudicial. When you allow everyone to submit by the same method of submission, even if erroneous, it is non-prejudicial. With regards to the argument that the government changed its tune and treating that as revisionist history, the response to that is actually rather simple. There is a concept known as final agency action, and the agency can start off going in one direction, but the question is where does it ultimately end up? And in this case, the final agency action was a rejection of Labatt's proposal for lateness, not for manner of submission. Finally, with regards to whether or not the offerors were ever notified that they were supposed to submit by hard copy besides the contract, if you look at page A203, 204, and 205 of the administrative record, which is the email that was sent out with Amendment 7, it expressly provides that submissions are to be provided via FedEx. And the other two offerors did understand that that meant for submission via FedEx, not submission via email, and properly complied with that provision. Finally, Labatt challenges and notes that the nature of this challenge would set forth an adverse precedent. We believe that's incorrect. In fact, to the contrary, ruling in Labatt's favor would allow an offeror to frame the nature of their challenge and solely rely upon the framing of their challenge as a challenge to the solicitation to have a protest, even where their challenge results from an error that was non-prejudicial,  and that is contrary to this Court's precedent. Are there any further questions? Any further questions? Thank you. Thank you. Thank you very much. The case is taken under submission.